IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHIPROCK ASSOCIATED SCHOOLS, INC.,

        Plaintiff,

                                     Civil No. 11-cv-983 MV/WDS

   v.

UNITED STATES OF AMERICA, *et al.*,

        Defendants.

## MEMORANDUM OPINION AND ORDER

     THIS MATTER comes before the Court on Defendants' Motion to Dismiss [Doc. 23].

The Court, having considered the motion, briefs, relevant law and being otherwise fully informed,

finds that the Motion is not well-taken and will be denied.

## BACKGROUND

I.     <u>The Tribally Controlled Schools Act</u>

     The Tribally Controlled Schools Act ("TCSA"), enacted in 1988, authorizes and requires

the Secretary of the Interior to award grants to Indian tribes or tribal organizations to operate

schools on their reservations if requested by a tribe.   *See* 25 U.S.C. § 2501 *et seq.*   In the TCSA's

"Declaration of policy," Congress noted its recognition that:

> The Indian Self-Determination and Education Assistance Act, which was a product
> of the legitimate aspirations and a recognition of the inherent authority of Indian
> nations, was and is a crucial positive step toward tribal and community control and
> that the United States has an obligation to assure maximum Indian participation in
> the direction of educational services so as to render the persons administering such
> services and the services themselves more responsive to the needs and desires of
> Indian communities.

25 U.S.C. § 2501(a).   Further, Congress specifically:

1

> declare[d] its commitment to the maintenance of the Federal Government's unique and continuing trust relationship with and responsibility to the Indian people for the education of Indian children through the establishment of a meaningful Indian self-determination policy for education that will deter further perpetuation of Federal Bureaucratic domination of programs.

25 U.S.C. § 2501(b).   Finally, Congress affirmed that "Indian people have special and unique educational needs" that "may be best met through a grant process."   25 U.S.C. § 2501(d).

> A.   Grants Authorized Under the TCSA

25 U.S.C. Section 2502 describes the "Grants authorized" under the TCSA.   With regard to the "Use of funds," Section 2502(a)(3)(A) provides that, "In general":

> Except as otherwise provided in this paragraph, grants provided under this chapter shall be used to defray, at the discretion of the school board of the tribally controlled school with respect to which the grant is provided, any expenditures for education related activities for which any funds that compose the grant may be used . . . including expenditures for –
>
> **(i)**   school operations, academic, educational, residential, guidance and counseling, and administrative purposes; and
>
> **(ii)**   support services for the school, including transportation.

25 U.S.C. § 2502(a)(3)(A).   Section 2502 (a)(3)(B) provides the only stated "Exception" to this general rule, as follows:

> Grants provided under this chapter may, at the discretion of the school board of the tribally controlled school with respect to which such grant is provided, be used to defray operations and maintenance expenditures for the school if any funds for the operation and maintenance of the school are allocated to this school under the provisions of any of the laws described in section 5205(a).

25 U.S.C. § 2502(a)(3)(B).

Section 2502(b) sets forth "Limitations" on the grants authorized under the TCSA.   Those limitations include an "Administrative costs limitation," as follows:   "Funds provided under any grant under this chapter may not be expended for administrative costs (as defined in section

2

2008(h)(1) of this title) in excess of the amount generated for such costs under section 2008 of this title."  25 U.S.C. § 2502(b)(3).

       B.     <u>Composition of Grants Provided Under the TCSA</u>

       The grants provided to an Indian tribe or tribal organization under the TCSA consist of Indian School Equalization Program ("ISEP") funds, allocated under 25 U.S.C. Section 2007, and funds for administrative costs, allocated under 25 U.S.C. Section 2008.   *See* 25 U.S.C. § 2503(a). Section 2007 provides for the establishment of a formula for determining the minimum annual amount of funds necessary to sustain each Bureau-funded school.   25 U.S.C. § 2007(a)(1).

       Section 2008 provides for grants for "the cost of necessary administrative functions."   25 U.S.C. § 2008(a)(1)(A).   Specifically, Section 2008(b)(1) provides:

> Subject to the availability of funds, the Secretary shall provide grants to each tribe or tribal organization operating a contract school or grant school in the amount determined under this section with respect to the tribe or tribal organization for the purpose of paying the administrative and indirect costs incurred in operating contract or grant schools.

25 U.S.C. § 2008(b)(1).   The stated purpose of these grants is to "enable tribes and tribal organizations operating such schools, without reducing direct program services to the beneficiaries of the program, to provide all related [necessary] administrative overhead services and operations," and to "carry out other necessary support functions which would otherwise be provided by the Secretary or other Federal officers or employees, from resources other than direct program funds, in support of comparable Bureau-operated programs."   25 U.S.C. §§ 2008(b)(1)(A)-(B).

       Section 2008(c), entitled "Determination of grant amount," sets forth the formula that "shall" be used to determine "[t]he amount of the grant provided to each tribe or tribal organization under this section for each fiscal year."   25 U.S.C. § 2008(c)(1).   That formula applies the

"administrative cost percentage rate" set forth in Section 2008(d).   25 U.S.C. § 2008(d).   The

amount of the administrative cost grant as determined pursuant to Section 2008(c) is herein

referred to as the "Calculated Need Amount."

Section 2008(j), entitled "Authorization of appropriations," provides that "[t]here are

authorized to be appropriated to carry out this section such sums as may be necessary."   25 U.S.C.

§ 2008(j)(1).   This subsection, however, also provides for pro rata "Reductions" in the event that

"the amount of funds appropriated to carry out this section for [any] fiscal year" are insufficient to

meet "the total amount of funds necessary to provide grants to tribes and tribal organizations in the

amounts determined under subsection (c) of this section."   25 U.S.C. § 2008(j)(2).   Specifically,

if the appropriated funds are insufficient, "the Secretary shall reduce the amount of each grant

determined under subsection (c) of this section for such fiscal year by an amount that bears the

same relationship to such excess as the amount of such grants determined under subsection (c) of

this section bears to the total of all grants determined under subsection (c) for all tribes and tribal

organizations for such fiscal year."   *Id.*   The amount of the administrative cost grant actually

paid, after reductions pursuant to Section 2008(j)(2), is herein referred to as the "Prorated Need

Amount."

II.     The Facts

Plaintiff Shiprock Associated Schools, Inc. (the "School") is a tribal organization of the

Navajo Nation.   Doc. 1 (Complaint) ¶ 3.   Pursuant to a TCSA grant agreement, the School

operates a pre-K through twelfth grade school program on the Navajo Reservation.   *Id.* ¶ 4.   For

the period ending June 30, 2009, the School's Calculated Need Amount, as determined pursuant to

Section 2008(c), was $1,113,800.   *Id.* ¶ 26.   The School's Prorated Need Amount, or the amount

of the administrative cost grant actually paid to the School after reductions pursuant to Section 2008(j), was $694,700.  *Id.*

For that same period, however, the School incurred $713,104 to support its Bureau of Indian Education ("BIE") funded school operations.  *Id.* ¶ 27.   This amount was below the $1,113,800 Calculated Need Amount determined by the government, but $72,790 more than the Prorated Need Amount paid through its administrative cost grant.  *Id.*   The School made up the difference between its actual administrative costs and its administrative cost grant with ISEP funds received pursuant to Section 2007.  *Id.*

In accordance with the Single Audit Act, made applicable to TCSA schools pursuant to 25 U.S.C. Section 2507(a)(1), the School retained Keystone Accounting, LLC (the "Auditor"), to perform an audit for the grant period ending June 30, 2009.  *Id.* ¶¶ 29-30.   The Auditor issued a finding questioning the School's $72,790 expenditures on administrative costs, because such expenditures exceeded the $694,700 actually paid to the School in the form of an administrative cost grant.  *Id.* ¶ 32.   Based on the audit report and additional information submitted by the School, BIE's New Mexico Navajo North Education Line Office ("ELO"), through Defendant Joel Longie, issued Findings and Determinations ("F&D") disallowing the $72,790 in administrative cost expenditures paid with ISEP funds.  *Id.* ¶ 34.   The ELO determined that the School would need to repay the federal government the disallowed costs of $72,790, and arranged for a bill of collection to be sent to the School.  *Id.* ¶¶ 36, 37.

Thereafter, on May 23, 2011, the School requested that the ELO revise the disallowed cost determination, and "allow [the School] to use [ISEP] funds to pay for the School's over expenditure of its Administrative Cost grant."  *Id.* Ex. 5.   In a letter dated October 27, 2011, the ELO rejected this request on the basis that, "[p]ursuant to the administrative cost limitation in the

[TCSA] (25 U.S.C. 2502(b)(3)), grant funds 'may not be expended for administrative costs in excess of the *amount generated* for such costs under' the administrative cost grant."   *Id.* (emphasis added).

The ELO's letter reflects the federal government's interpretation of the phrase "amount generated," as used in Section 2503(b)(3), to mean the School's Prorated Need Amount, or the amount of the administrative cost grant paid to the School after reductions pursuant to Section 2008(j), as opposed to the School's Calculated Need Amount, as determined pursuant to Section 2008(c).   The School argues that this is a new interpretation, representing a new governmental policy to disallow schools from spending any ISEP funds to cover administrative grant shortfalls, even when a school incurs legitimate administrative costs that remain within the limit set by the statutorily determined Calculated Need Amount.  *Id.* ¶ 41.   According to the School, this new policy represents an impermissible interpretation of the TCSA and, as a result, the government's disallowance of the School's administrative cost expenditures made with ISEP funds is equally impermissible.  *Id.* ¶ 43.

On November 3, 2011, the School filed a five-count Complaint for Declaratory and Other Relief.   Doc. 1.   Specifically, the School seeks an order requiring Defendants to withdraw their disallowed cost determination, and declaring that: the disallowance of the School's use of ISEP funds to pay for $72,790 in administrative costs was arbitrary and capricious, clearly erroneous and/or contrary to law; and Defendants' new policy on TCSA school administrative cost expenditures is not enforceable against the School.   *Id.* (Count I).   In the alternative, the School asks the Court to find that Defendants' new policy may not be lawfully imposed or enforced on the School:   without the School's consent (Count II); without compliance with the APA Federal Register publication and comment requirements (Count III); without announcement or publication

6

of the new policy (Count IV); and without completion of required tribal consultation requirements (Count V).   *Id.*

On July 27, 2012, Defendants filed the instant motion to dismiss.   Doc. 23.   The School filed its response in opposition on August 30, 2012.   Doc. 25.   Defendants' reply followed on September 14, 2012.   Doc. 26.

## LEGAL STANDARD

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint."   *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).   When considering a 12(b)(6) motion, the Court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.   *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   Accordingly, while the Court must take all of the factual allegations in the complaint as true, "a plaintiff armed with nothing more than conclusions" cannot survive a motion to dismiss.   *Iqbal*, 556 U.S. at 679.

7

**DISCUSSION**

In the Complaint, the School alleges that it was unlawful for Defendants to interpret Sections 2007, 2008 and 2502 to disallow the School's use of ISEP funds to cover administrative costs that exceeded the amount of the School's administrative cost grant.   This allegation rests on the premise that the reasonable and proper interpretation of those statutory provisions allows a school receiving TCSA grant funds to use ISEP funds to pay for administrative costs that exceed the school's Prorated Need Amount, so long as those administrative costs do not exceed its Calculated Need Amount.   Defendants disagree, arguing that the plain language of the relevant statutory provisions forecloses the premise of the School's Complaint.   Specifically, Defendants contend that the plain language of the TCSA limits administrative cost expenditures to the administrative cost grant actually paid to a school, and prohibits the school from using ISEP funds to pay for *any* administrative costs.   Accordingly, Defendants conclude, the Complaint fails as a matter of law.

    A.    <u>Principles of Statutory Construction</u>

In cases involving statutory construction, the Court's "task is to interpret the words of the statute in light of the purposes Congress sought to serve." *Wright v. Fed. Bureau of Prisons*, 451 F.3d 1231, 1234 (10th Cir. 2006), *cert. denied*, 549 U.S. 1152 (2007).   Accordingly, the Court "read[s] the words of the statute in their context and with a view to their place in the overall statutory scheme." *Id.* (citation omitted).

"The starting point in any case involving statutory construction is the language of the statute itself." *Ramah Navajo Chapter v. Lujan*, 112 F.3d 1455, 1460 (10th Cir. 1997).   "When the terms of the statute are clear and unambiguous, that language is controlling absent rare and exceptional circumstances." *Id.*   (citation omitted).

If, however, a statute is ambiguous, the Court "look[s] to traditional canons of statutory construction to inform [its] interpretation." *Ramah Navajo Chapter v. Salazar*, 644 F.3d 1054, 1062 (10th Cir. 2011), *aff'd*, 132 S. Ct. 2181 (2012).   In cases involving Native Americans, "[i]n deciding between two reasonable interpretations, the canon of construction favoring Native Americans controls over the more general rule of deference to agency interpretations of ambiguous statutes." *Id.* (citation omitted).   Accordingly, "federal statutes are to be construed liberally in favor of Native Americans, with ambiguous provisions interpreted to their benefit." *Lujan*, 112 F.3d at 1461.   "This canon of statutory construction is rooted in the unique trust relationship between the United States and the Indians." *Id.*   It "applies with equal force to interpretations of contracts." *Salazar*, 644 F.3d at 1062.

B.     The TCSA's Limitation on Administrative Cost Expenditures

The Court is presented with competing interpretations of Section 2502(b)(3).   That provision sets an "administrative cost limitation" on grants authorized under the TCSA. Specifically, Section 2502(b)(3) states that funds provided under any TCSA grant may not be expended for administrative costs "in excess of the amount generated for such costs under section 2008." 25 U.S.C. § 2502(b)(3).   The phrase "amount generated" does not appear at all in Section 2008.   Relevant here, Section 2008 includes, *inter alia*: a subsection entitled "Determination of grant amount" (subsection (c)), which sets forth a formula that "shall" be used to determine "[t]he amount of the grant provided;" and another subsection entitled "Authorization of appropriations (subsection (j)), which, in addition to authorizing appropriations of the sums necessary to carry out Section 2008, also provides for pro rata "Reductions" in the event that the amount of funds actually appropriated in any given year is insufficient to meet the total amount of funds necessary to provide grants in the amount determined under subsection (c).

Defendants argue that the phrase "amount generated for such costs under section 2008," as used in Section 2502(b)(3), *unambiguously* means the Prorated Need Amount, or the amount of the administrative cost grant actually paid to the School, *after* reductions for insufficient appropriations pursuant to Section 2008(j).   According to Defendants, any other reading of this provision would fail to take into account Section 2008 "as a whole," which, they argue, the plain language of Section 2502(b)(3) requires.   On the other hand, the School argues that the phrase "amount generated for such costs under section 2008," is ambiguous, and under the canon of construction favoring Native Americans, should be interpreted to mean the Calculated Need Amount, as determined pursuant to Section 2008(c).   Under this interpretation, Section 2502(b)(3) would authorize the use of TCSA grant funds for administrative costs up to the amount determined, pursuant to Section 2008(c), to be necessary for the School to carry out its administrative functions.

The Court disagrees with Defendants that the plain language of Section 2502(b)(3) clearly and unambiguously limits the amount of TCSA grant funds that may be used to cover administrative costs to the amount of the administrative cost grant *actually paid* to the School. The phrase "amount generated" is undefined, and is not used at all in Section 2008.   Indeed, the plain language of Section 2008 identifies neither the Calculated Need Amount nor the Prorated Need Amount as the "amount generated" for administrative costs.   Defendants' argument that Section 2008 must be read "as a whole" begs the question, as none of the provisions in that section sheds any light on the meaning of the phrase "amount generated."   While the "plain text of [Section 2502(b)(3)] . . . "does not mention any 'formula' or specific subsections of § 2008," neither does Section 2008 mention "amount generated."   Doc. 26 at 3.

Section 2008(c) sets forth a formula for *determining* the amount of the grant provided to the School for the cost of necessary administrative functions.   While Section 2008(j)(2) provides for the pro rata *reduction* of each grant determined under subsection (c) in the event of insufficient appropriations, nothing in that provision indicates that it "affects the *amount generated* for AC," as Defendants argue.   Doc. 23-1 at 10 (emphasis added).   In an effort to prove their point, Defendants do precisely what they argue so vehemently against:   "add to or alter words employed [in a statute] to effect a purpose which does not appear on the face of that statute."   *Id.* at 9 (citing *Hanover Bank v. Comm'r of Internal Revenue*, 369 U.S. 672, 687 (1962)).   In short, while subsection 2008(j)(2) "cannot be ignored," there is nothing in the plain language of Section 2008(j)(2), or in any other subsection of Section 2008, to suggest that the phrase "amount generated" necessarily means the amount of the administrative cost grant actually paid to the School, after reductions for insufficient appropriations.[1]

Nor does the fact that tribal organizations have sought a "technical clarification" of or a "technical correction" to the language of Section 2502(b)(3) support Defendants' argument that the phrase "amount generated" unambiguously means the Prorated Need Amount.   In fact, these requests for technical changes suggest to the contrary.   As Defendants' own references make clear, the tribal organizations were not seeking a substantive change to the statute, but rather a technical clarification or correction to the language employed in the statute; in other words, they were asking Congress to make the language clearer, so as to accurately reflect Congressional intent, as they understood it, to allow TCSA grant funds to be used for administrative costs up to the amount determined to be necessary under Section 2008(c).   *See* Doc. 23-1 at 11.   Indeed, that

---

[1] Equally unpersuasive is Defendants' reference to Section 2008(a)(1)(A), which makes the provision of the administrative cost grant determined under subsection (c) "[s]ubject to the availability of funds."   Again, nothing in this language makes clear the definition of the phrase, "amount generated," as used in Section 2502(b)(3).

the tribal organizations understood Section 2052(b)(3) to allow the use of other grant funds to

make up the difference between the cost of necessary administrative functions and their

administrative cost grant is highlighted by repeated tribal testimony that, in the several years

during which they did not receive administrative cost grants sufficient to cover the costs of

necessary administrative functions, TCSA grant recipients made up the shortfall with education

funds.   Doc. 25 at 16-18.   At a minimum, the requests of tribal organizations for a technical

clarification or correction suggest that the language of Section 2502(b)(3) is anything but plain.

Because Section 2502(b)(3) is ambiguous, this Court must look to traditional canons of

statutory construction to inform its interpretation.   Here, where "the policy of self-determination,

which is the driving purpose behind the [TCSA], is derived from the same source as the canon of

construction favoring Native Americans, *i.e*, the unique trust relationship between the federal

government and Native Americans," that canon of construction controls.   *Lujan*, 112 F.3d at

1462; 25 U.S.C. §§ 2501(a), (b).   The Court thus construes the TCSA liberally in favor of the

School, with ambiguous provisions, including Section 2502(b)(3), to the School's benefit.   "The

result, then, is that if the [TCSA] can reasonably be construed as the [School] would have it

construed, it must be construed that way."   *Lujan*, 112 F.3d at 1462; *see also Freemanville Water

Sys., Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1210 (11th Cir. 2009) ("Because there

is ambiguity, the thumb that presses down in favor of [Native Americans] tips the balance.").

The School contends that the Court should interpret the phrase "amount generated," as

used in Section 2502(b)(3), to mean the amount of the administrative cost grant as determined

pursuant to Section 2008(c), or the School's Calculated Need Amount.   Under this interpretation,

the School would be entitled to use its TCSA grant funding on administrative costs, so long as

those costs do not exceed the Calculated Need Amount, regardless of whether they exceed the

Prorated Need Amount.   The Court finds this construction reasonable, as the Calculated Need Amount, rather than the Prorated Need Amount, reflects the amount determined to be the cost of the School's "necessary administrative functions."   As the School notes, reductions in administrative cost grants are tied not to a reduction in the amount of those necessary costs, but rather to reduced appropriations to cover those costs; and the costs incurred by the School for "necessary administrative functions" remain constant regardless of reductions in appropriations. Thus, reason dictates that Section 2502(b)(3) should be read to set the administrative cost limitation at the Calculated Need Amount, rather than at the Prorated Need Amount.

Indeed, reading the TCSA to set the administrative cost limitation at the School's Calculated Need Amount is the only way to fulfill the Court's task of interpreting "the words of the statute in light of the purposes Congress sought to serve" in enacting the TCSA.   *Wright*, 451 F.3d at 1234.   The declared policy of the TCSA recognizes the federal government's "obligation to assure maximum Indian participation in the direction of educational services," and its "commitment to . . . the establishment of a meaningful Indian self-determination policy for education that will deter further perpetuation of Federal Bureaucratic domination of programs." 25 U.S.C. §§ 2501(a), (b).   Further, Congress specifically indicated that the "special and unique educational needs" of Native Americans "may be best met through a grant process."   25 U.S.C. § 2501(d).   The Complaint alleges, and Defendants do not dispute, that for several years, Congress has appropriated insufficient funds to meet the School's Calculated Need Amount.   Accordingly, in order to meet the cost of its necessary administrative functions, the School has been obligated to use other grant funds to cover administrative costs.   Interpreting Section 2502(b)(3) to disallow this practice would render it fiscally impossible for the School to continue to administer its school programs independently.   Ultimately, the School would be forced to relinquish back to the federal

13

government control and direction over its school programs.   Such a result would turn the TCSA, and the grant process Congress thought best to reach the goals of the TCSA, on its head. Accordingly, in order to effectuate Congressional intent to assure maximum Indian participation in the direction of educational services, establish a meaningful Indian self-determination policy for education, and deter further perpetuation of federal bureaucratic domination of educational programs, Section 2502(b)(3) should be read to set the administrative cost limitation at the Calculated Need Amount, rather than at the Prorated Need Amount.

Finally, interpreting Section 2502(b)(3) to set the administrative cost limitation at the School's Calculated Need Amount is consistent with the legislative history of the TCSA. Specifically, a House Report states that, with regard to the authorized use of TCSA grant funds, "no more may be spent on administrative costs than was generated under the administrative formula provision [now set forth in Section 2008(c)]."   House Report 100-95, 100th Cong., 1st Sess. (May 15, 1987).   Similarly, a Senate Report states that TCSA grant funds "may not be expended for administrative costs . . . in excess of the amount generated for such costs under section 1128(c) of such Act."   Senate Report 100-233, 10th Cong. 1st Sess. (Nov. 30, 1987).[2]

Defendants attempt to discredit the School's reliance on these committee reports with a quote from a concurrence written by Justice Scalia, in which he joined in the opinion of the Court "with the exception of its discussion of legislative history."   *Zedner v. United States*, 547 U.S. 489, 509 (2006) (Scalia, J, concurring in judgment).   Justice Scalia wrote separately for the purpose of reaffirming his position that the Court should look only to 'the text of the enacted statute," and not to legislative history.   *Id.* at 509-10.   Justice Scalia's position, however, has not been adopted by the majority of the Supreme Court.   Indeed, in *Zedner* itself, the Court devotes an

---

[2] Section 1128(c), as referenced in the Senate Report, is now set forth at Section 2008(c).

entire section to analyzing whether the statutory interpretation at issue was "in accord with the []
legislative history." *Id.* at 501.   And in analyzing the issue, the Court looked specifically to the
House and Senate Reports. *Id.*   Contrary to Defendants' argument, committee reports and floor
debates are "ordinarily considered legislative history," and it is entirely proper for the Court to
consider them in determining whether the School's proposed interpretation of Section 2502(b)(3)
is consistent with the TCSA's legislative history. *Fredericks v. Jonsson*, 609 F.3d 1096, 1100
(10th Cir. 2010).

Defendants also call into question the significance of the House and Senate Reports on the
basis that the language of the TCSA was changed, after those reports were written, to refer
generally to "section 1128A of such Act," rather than specifically to section 1128(c).   The fact
that the legislation was subsequently revised does no more than reconfirm the ambiguity in the
statute that this Court has already identified.   Defendants have pointed to no legislative history
supporting their own interpretation of the TCSA, or evidencing that, after the House and Senate
Reports were written, Congress decided to change the guidepost for the TCSA's administrative
cost limitation.   In the absence of legislative history addressing the significance of the changes
noted by Defendants to the meaning of the phrase, "amount generated," the Court finds the
legislative history accompanying the TCSA sufficiently consistent with the School's proposed
interpretation of Section 2052(b)(3) to allow the Court to adopt that interpretation.

C.   The Use of ISEP Funds to Pay for Administrative Costs

Defendants argue that, based on a plain reading of the relevant statutory provisions, ISEP
funds allocated under Section 2007 may not be used for administrative cost expenditures.   In
support of this argument, Defendants first contend that because ISEP funds are allocated under
Section 2007, they are not "generated" under Section 2008, and thus cannot be used for

15

administrative cost expenditures.   As discussed above, the Court interprets the phrase "amount

generated" to mean the School's Calculated Need Amount, as determined pursuant to the formula

set forth in Section 2008(c).   Nothing in Section 2008 limits, or even addresses, the sources of

funding that may be used to meet the School's Calculated Need Amount.   Nor does Section

2502(b)(3) limit the funds that may be used to pay the "amount generated for [administrative] costs

under Section 2008" to funds allocated pursuant to Section 2008.   In fact, to the contrary, Section

2502(b)(3) makes clear that the administrative cost limitation set forth therein applies to "[f]unds

provided *under any grant under this chapter*."   25 U.S.C. § 2502(b)(3) (emphasis added).

Accordingly, Defendants' first contention fails.

Next, Defendants contend that Section 2008(b)(1) explicitly prohibits the use of ISEP

funds for administrative cost expenditures.   That provision states in relevant part:

> [T]he Secretary shall provide grants . . . in the amount determined under this section
> . . . for the purpose of paying the administrative and indirect costs incurred in
> operating contract or grant schools, in order to –
>
>> (A) enable tribes and tribal organizations operating such schools, without
>> reducing direct program services to the beneficiaries of the program, to
>> provide all related administrative overhead services and operations
>> necessary to meet the requirements of law and prudent management
>> practice; and
>
>> (B) carry out other necessary support functions which would otherwise be
>> provided by the Secretary or other Federal officers or employees, from
>> resources other than direct program funds, in support of comparable
>> Bureau-operated programs.

25 U.S.C. § 2008(b)(1).   While the plain language of this provision makes clear that the

administrative cost grant is intended to enable tribes and tribal organizations to operate their

schools "without reducing direct program services" and from "resources other than direct program

funds," nothing in this provision *prohibits* tribes and tribal organizations from using "direct

program funds," such as ISEP funds, where necessary to maintain the operation of their schools.

16

Indeed, nothing in this provision speaks to the use of ISEP funds for the maintenance of school operations.   Accordingly, Defendants' second contention fails.

Third, Defendants contend that Section 2502(a)(3)(A) disallows the use of Section 2007 ISEP funds for administrative purposes.   Section 2502(a)(3)(A) provides that, "In general":

> Except as otherwise provided in this paragraph, grants provided under this chapter shall be used to defray, at the discretion of the school board of the tribally controlled school with respect to which the grant is provided, any expenditures for education related activities for which any funds that compose the grant may be used . . . including expenditures for –
>
> **(i)**   school operations, academic, educational, residential, guidance and counseling, and administrative purposes; and
>
> **(ii)**   support services for the school, including transportation.

25 U.S.C. § 2502(a)(3)(A).   Subsection (a)(3)(B) provides the only stated "Exception" to this general rule, as follows:

> Grants provided under this chapter may, at the discretion of the school board of the tribally controlled school with respect to which such grant is provided, be used to defray operations and maintenance expenditures for the school if any funds for the operation and maintenance of the school are allocated to this school under the provisions of any of the laws described in section 5205(a).

25 U.S.C. § 2502(a)(3)(B).

According to Defendants, Section 2502(b)(3) provides an exception to the "general rule" set forth in Section 2502(a)(3)(A).   Specifically, Defendants argue that although Section 2502(a)(3)(A), on its face, allows TCSA grants to be used to defray any expenditures for education related activities, including administrative purposes, Section 2502(b)(3) provides an exception to this rule, disallowing the use of grants to defray administrative costs, to the extent those costs exceed the School's Prorated Need Amount.   As discussed above, however, the Court does not agree that Section 2502(b)(3) disallows the use of TCSA grant funds to defray administrative costs that exceed the School's Prorated Need Amount, so long as those costs do not exceed the School's

17

Calculated Need Amount.   Moreover, even if the Court were to adopt Defendants' interpretation of this provision, Defendants' argument nonetheless would fail, as Section 2502(b)(3) is not part of the same paragraph as Section 2502(a)(3)(A).   Section 2502(a)(3)(A) begins with the phrase, "[e]xcept as otherwise provided in this paragraph . . ."   Section 2502(b)(3) is a separate paragraph from Section 2502(a)(3)(A).   Thus, by the very words used in Section 2502(a)(3)(A), Section 2502(b)(3) cannot provide an exception to the "general rule" set forth in Section 2502(a)(3)(A). Rather, the plain language of the statute makes clear that Congress intended Section 2502(a)(3)(B) to provide the only exception to the "general rule" set forth in Section 2502(a)(3)(A). Undisputedly, Section 2502(a)(3)(B) is irrelevant to this case.

Defendants further contend that because Section 2502(a)(3)(A) states that grants may be used to defray only those "expenditures for education related activities for which any funds that compose the grant may be used," and because Sections 2502(b)(3) and 2008(b)(1) preclude the use of ISEP funds for administrative cost expenditures, Section 2502(a)(3)(A) cannot be read to authorize the use of ISEP funds for administrative cost expenditures.   According to Defendants, Sections 2502(b)(3) and 2008(b)(1) are "specific provisions," while Section 2502(a)(3)(A) is a "general provision."   Defendants argue that accepted canons of statutory construction require the Court to read the general authorization set forth in Section 2502(a)(3)(A) in light of the specific limitations on the use of ISEP funds set forth in Sections 2502(b)(3) and 2008(b)(1).   As set forth above, however, the Court rejects the very premise of this argument.   Specifically, the Court does not agree that Section 2008(b)(1) precludes the use of ISEP funds for administrative cost expenditures, or that Section 2502(b)(3) sets the administrative cost limitation at the School's Prorated Need Amount.   Accordingly, this argument, too, must fail.

18

Contrary to Defendants' position, it simply is not "clear from the statutory framework" that the School is prohibited from using ISEP funds for administrative purposes.   Doc. 23-1 at 16. Indeed, Congress did not include any language in Section 2007 itself – the very provision providing the allotment formula for ISEP funds – to prohibit the use of ISEP funds for administrative purposes.   Congress did, however, clearly indicate that a specific subset of funds provided under Section 2007, namely funds reserved for emergencies, "may be expended only for education services or programs."   25 U.S.C. § 2007(d)(2).   Inclusion of this limitation would be nonsensical if Congress intended to prohibit ISEP funds from ever being used for non-education services or program costs.   Accordingly, the plain language of Section 2007 itself militates against Defendants' argument.

For all of these reasons, the Court disagrees that the relevant statutory provisions clearly and unambiguously prohibit the use of ISEP funds to defray administrative costs.   As discussed above, under the canon of construction favoring Native Americans, to the extent that Sections 2008(b)(1) and 2052(a)(3)(A) are ambiguous, the Court must construe these provisions liberally in favor of the School.   If these provisions can reasonably be construed as the School would have them construed, the Court must construe them that way.

The School argues that the Court should interpret Section 2008(b)(1) not to prohibit the use of "direct program funds" for administrative costs, but rather to reflect Congress' *aspiration* that providing a grant specifically targeted to defray administrative costs, in addition to a grant of direct program funds, would enable tribes and tribal organizations to operate their schools "without reducing direct program services," and "from resources other than direct program funds."   The Court finds this interpretation reasonable.   If the Court instead were to interpret Section 2008(b)(1) to prohibit the use of ISEP funds for administrative costs, in the absence of sufficient

19

appropriations, the School would lack the resources to continue to administer its programs independently.   And indeed, for several years, Congress has appropriated insufficient funds to cover the School's administrative needs.   Accordingly, reading Section 2008(b)(1) to prohibit the use of ISEP funds for necessary administrative functions would force tribes and tribal organizations to rely on the federal government to run its schools.   Such a result would be contrary not only to the stated purpose of the TCSA as a whole, but also to a stated purpose of Section 2008(b)(1) itself:   to enable tribes and tribal organizations to "provide all related administrative overhead services and operations necessary to meet the requirements of law and prudent management practice," and to carry out their "necessary support functions which would otherwise be provided" by the federal government.

Moreover, Defendants have pointed to nothing in the legislative history of the TCSA to demonstrate Congressional intent to prohibit the use of ISEP funds to defray necessary administrative costs.   This is telling, given ample evidence before Congress that tribes and tribal organizations have routinely tapped into their ISEP funds when appropriations for administrative cost grants were insufficient to cover administrative expenses.   For the reasons discussed above in the context of the School's interpretation of the phrase "amount generated," the Court finds the legislative history accompanying the TCSA sufficiently consistent with the School's interpretation of Section 2008(b)(1) to allow the Court to adopt that interpretation.

The School argues that the Court similarly should interpret Section 2502(a)(3)(A) to allow the School to use ISEP funds for administrative purposes.   That provision states that grants provided under the TCSA – including ISEP funds – may be used to defray "any expenditures for education related activities for which any funds that compose the grant may be used . . . including expenditures for . . . administrative purposes."   25 U.S.C. § 2502(a)(3)(A).   Sections 2008 and

20

2502(b)(3) make clear that "funds that compose the grant may be used . . . for administrative purposes."   Accordingly, it is reasonable to read Section 2502(a)(3)(A) to allow for the use of the School's TCSA grant, including ISEP funds, to defray its administrative costs.   For the reasons discussed above, this is the only reading that allows the School to remain in control of its school programs, thus furthering the purposes behind the TCSA.   Also for the reasons discussed above, this reading comports with the legislative history accompanying the TCSA.

     D.     <u>Defendants' Disallowance of the School's Expenditures Was Invalid</u>

The Court finds that the TCSA, as reasonably and properly interpreted, allows the School to use grant funds, including ISEP funds, to defray the costs of its necessary administrative functions, so long as those costs do not exceed its Calculated Need Amount.   Here, Defendants disallowed the School's administrative cost expenditures to the extent those expenditures exceeded the School's Prorated Need Amount, despite the fact that those expenditures were within the limit of the School's Calculated Need Amount.   The disallowance thus was based on an unreasonable and improper interpretation of the TCSA.   Count I of the Complaint, which alleges precisely this impropriety in Defendants' disallowance determination, states a claim upon which relief can be granted.   Accordingly, Defendants' motion to dismiss Count I for failure to state a claim is without merit, and must be denied.

Because the Court has determined that Defendants' interpretation of the TCSA was invalid, there is no need to address whether, as a matter of law, the School has stated a claim with regard to its alternative allegations, set forth in Counts II through V of the Complaint.   As those Counts necessarily depend on a determination that Defendants' interpretation of the TCSA was valid, they are rendered moot by this Court's decision.

**CONCLUSION**

Defendants' disallowance of the School's administrative cost expenditures was based on an unreasonable and improper interpretation of the TCSA.   Count I of the Complaint, which seeks relief from Defendants' disallowance determination on the basis that it reflects an invalid interpretation of the TCSA, thus states a claim upon which relief can be granted.   The remaining Counts of the Complaint, all of which are alleged in the alternative and necessarily depend upon a determination that Defendants' interpretation of the TCSA was valid, are rendered moot by this Court's decision.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss [Doc. 23] is DENIED.


DATED this 28th day of March, 2013.

_____
MARTHA VÁZQUEZ
United States District Judge